## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROBERTA HOUSE-FORSHEE,                             Case No. 1:24-cv-110

          Plaintiff,                             McFarland, J.

   v.                                          Bowman, M.J.

BENEFITS COMMITTEE OF WESTERN & SOUTHERN
FINANCIAL GROUP CO. FLEXIBLE BENEFITS PLAN, et al.,

        Defendants.

### REPORT AND RECOMMENDATION

On March 4, 2024, Plaintiff Roberta House-Forshee filed this civil action against the Benefits Committee of Western & Southern Financial Group Co. Flexible Benefits Plan and Western & Southern Financial Group, Inc. (collectively "W&S") under the Employee Retirement Income Security Act of 1974 ("ERISA"). In her complaint, Plaintiff alleges that W&S wrongfully denied her short-term disability benefits under an Employee Welfare Benefit Plan that provided group disability benefits to W&S employees. (Doc. 1).

This case has been referred to the undersigned magistrate judge for initial review of all pretrial motions other than motions for summary judgment. (Doc. 2). On January 30, 2025, Defendants filed a motion to dismiss. For the reasons stated, the motion to dismiss should be GRANTED, but without prejudice to Plaintiff's ability to move for a post-judgment award of attorney's fees if appropriate.

### I.    Background

Plaintiff was previously employed as a customer service representative at the Gerber Life Insurance Company, a subsidiary of Western & Southern Financial Group. On June 12, 2023, Plaintiff submitted a claim for short-term disability benefits to the

Western & Southern Financial Group Flexible Benefits Plan ("Plan"). After initially approving Plaintiff's claim for benefits starting June 12, W&S terminated Plaintiff's short-term benefits on July 7, 2023. Plaintiff appealed, but W&S denied Plaintiff's appeal of the adverse short-term disability claim on September 8, 2023. (*Id.*, ¶¶ 25-27, Doc. 17-1, PageID 71).[1] In its denial, W&S cited alleged inadequacies in the documentation submitted by Plaintiff in support of her claim.

Following exhaustion of her administrative appeal on the short-term benefits claim, on March 5, 2024, Plaintiff filed this lawsuit. In her federal complaint, Plaintiff asserts that the W&S denial was arbitrary and capricious and in violation of ERISA and Defendants' fiduciary obligations. (Doc. 1). Specifically, Plaintiff alleges that W&S "failed to exercise the statutorily required duty of care and prudence, failing to administer the Plan solely in the interests of the participants and beneficiaries as required under 28 U.S.C. §1104(a)(1)"; "by denying benefits to the Plaintiff contrary to the law and terms of the Plan" and because W&S "arbitrarily ignored and selectively reviewed documents Plaintiff has submitted and has failed to provide a full and fair review." (Doc. 1, ¶ 32). In support of her claims, Plaintiff alleges in part that W&S sent an incomplete claim file to the Appeals Committee for review of the denial of her claim for short-term benefits, and took no action after they became aware of omissions. (Doc. 1, ¶¶ 25-27; Doc. 17-1, PageID 83-116).

On or about January 10, 2024, Plaintiff filed an additional claim seeking long term disability ("LTD") benefits under the Plan. (Doc. 17, ¶ 3). W&S denied that claim by letter

---

[1]Plaintiff's counsel has submitted a Declaration under penalty of perjury in support of her opposition to Defendants' motion to dismiss, as well as excerpts from the Administrative Record and an invoice reflecting her attorney's fees through October 31, 2024. (Docs. 17, 17-1, 17-2). As discussed below, the undersigned considers both parties' evidentiary submissions in the context of Defendants' factual attack on this Court's subject matter jurisdiction.

dated April 8, 2024, shortly after this lawsuit was filed. (Doc. 17, ¶4). On the same date, W&S issued a letter allegedly approving short-term disability benefits for March 25-May 7, 2024, dates for which Plaintiff maintains that she should have been eligible for LTD benefits. (*Id.*) In order to administratively exhaust her separate LTD claim, Plaintiff filed a separate administrative appeal of the decision denying her LTD benefits on October 2, 2024. (Doc. 17, ¶ 6).

Plaintiff's counsel attests that also on October 2, in the course of settlement discussions for the above-captioned case, she notified defense counsel that a resolution of this case involving short-term benefits would require W&S to administratively reverse the prior denial in order to avoid prejudicing the resolution of her then still-pending LTD claim. While a separate claim, counsel represents that the outcome of the LTD claim depended in part on the existence of a short-term benefits award. (Doc. 17, ¶ 8; Doc. 18, PageID 121-122). Plaintiff's counsel's email to defense counsel stated: "I'm open to discussing the contours of this but to me the easiest thing seems to be an administrative decision by W&S that would essentially render the lawsuit moot as to her [short-term] benefit claim, and settlement as to (my limited) attorney fees and costs." (Doc. 17, ¶ 8).

Approximately two weeks later on October 18, 2024, the Western & Southern Benefits Appeals Committee issued a letter to Plaintiff's counsel stating that, in connection of Plaintiff's October 2 appeal of the denial of LTD benefits under the Plan, it had "further considered" its prior administrative denial of her appeal for short-term benefits. (Doc. 15-1, PageID 47). The letter concludes: "Based on additional information received by the Benefits Appeals Committee, the Benefits Appeals Committee has determined that Ms. House-Forshee was unable to perform the normal duties of her

3

regular occupation for any employer from July 8, 2023 through October 30, 2023." (*Id.*)

The October 18 letter does not identify what "additional information" was received by W&S, when it was received, or from whom. Plaintiff asserts that Defendants "had all potentially relevant information to …change its mind for *at least* 10 months," dating to Plaintiff's submission of records with her LTD application on or about January 10, 2024. (Doc. 18, PageID 131) (emphasis original). In other words, Plaintiff disputes that any "additional information" was received by W&S beyond the initiation of this lawsuit and counsel's settlement demand.

Following notice of the reversal of the adverse benefits decision, Plaintiff's counsel represents that she continued settlement discussions concerning her attorney's fees, which totaled $4,108.50 as of October 31, 2024.[2] At Defendants' request, Plaintiff withdrew her outstanding discovery requests, and the parties jointly sought to extend the Court's Calendar deadlines. (Doc. 16, ¶¶ 5, 7).

The parties never consummated a written settlement. Instead, on January 30, 2025, Defendants moved to dismiss based on their post-litigation reversal of the decision denying Plaintiff's claim for short-term benefits. According to W&S, this federal case is now moot because Plaintiff has been paid all short-term benefits to which she is entitled.

## II. Analysis

### A. Standard of Review and Burden of Proof under Rule 12(b)(1)

Defendants assert that this Court no longer has subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. The standard of review for a motion to dismiss filed under

---

[2]Doc. 17-2 (Attorney Fee Invoice). Curiously, counsel's time records suggest that she was notified of the reversal of the benefits decision not on October 18, 2024, the date of the letter, but on October 2, 2024. (Doc. 17-2, PageID 117).

Rule 12(b)(1) depends on the type of motion that has been filed.

> Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. *Id.* When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* If those allegations establish federal claims, jurisdiction exists.

> Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations. *Id.* When a factual attack…raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist. *Id.* In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Id.*

*Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir, 2007)

(additional citations omitted).

W&S does not identify whether it is mounting a facial attack or a factual attack under Rule 12(b)(1), but Plaintiff suggests that Defendants' motion should be considered a "facial" attack. (Doc. 18, PageID 127-128). The substance of W&S's motion is based on the doctrine of mootness.

> Article III, § 2 of the United States Constitution vests federal courts with jurisdiction to address "actual cases and controversies." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (citing U.S. CONST. art III, § 2). Federal courts are prohibited from rendering decisions that "do not affect the rights of the litigants." *Id.* (citing *Southwest Williamson Cty. Cmty. Assoc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)). A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome."

*Thomas v. City of Memphis, Tennessee*, 996 F.3d 318, 323–24 (6th Cir. 2021) (citations omitted). In support of their motion, Defendants expressly cite to a "post-litigation decision" to award benefits, and Plaintiff herself cites to evidentiary exhibits. The fact that

5

both parties rely on evidence outside the complaint confirms that the pending motion constitutes a factual attack. *Accord AF, Inc. v. U.S. Citizenship and Immigration Services,* No. 23-cv-13009, 2025 WL 308118, at *2 (E.D. Mich. Jan. 27, 2025) (where mootness argument relies on evidence outside the pleadings, it presents a factual challenge); *Property Management Connection, LLC v. Consumer Financial Protection Bureau*, No. 3:21-cv-00359, 2021 WL 5282075, at *4 (M.D. Tenn. Nov. 10, 2021) (same).

The presiding district judge has referred all motions other than motions for summary judgment to the undersigned for initial consideration. Consistent with the general principle that jurisdictional issues may be raised at any time, the issue of mootness may be raised *either* in the context of a Rule 12(b)(1) motion or on summary judgment. Notably, the undersigned's consideration of evidence relating to a factual attack on subject matter jurisdiction (such as mootness) under Rule 12(b)(1) "does not convert the motion into one for summary judgment." *Alpine Industries v. F.T.C.*, 40 F.Supp.2d 938, 940 (E.D. Tenn. 1998). The undersigned therefore considers all relevant evidentiary exhibits within the context of the pending Rule 12(b)(1) motion to dismiss.

Having resolved the issue of whether the undersigned may review and weigh relevant evidence based on the factual nature of the motion presented, the undersigned briefly considers the burden of proof. Defendant cites to a general rule that Plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). But mootness is different. Under controlling Supreme Court and Sixth Circuit case law, "[t]he heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001) (citing *Los Angeles*

6

*v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379 (1979)); *see also*, *generally*, *West Virginia v. EPA*, 597 U.S. 697, 719, 142 S.Ct. 2587 (2022) (reaffirming longstanding distinctions between standing and mootness and holding that the party asserting mootness bears the burden of proving it). Therefore, W&S carries the burden of demonstrating mootness.

### B. Plaintiff's Substantive Claim for Benefits is Moot

When Plaintiff filed her complaint in March 2024, W&S had denied Plaintiff's application for short-term disability benefits, and the Appeals Committee had confirmed that denial. Defendants do not dispute that in March 2024, Plaintiff had established standing by fully exhausting her administrative appeal of the adverse short-term disability decision. At that time, the parties had a "live" case or controversy over which the Court could exercise jurisdiction.

On October 18, 2024, however, W&S voluntarily reopened its consideration of the closed administrative record, and reversed its prior adverse decision. (Doc. 15-1). In so doing, W&S notified Plaintiff's counsel that it was awarding Plaintiff all short-term disability benefits that she sought to obtain in this litigation. W&S persuasively argues that because it has now paid Plaintiff all short-term benefits that she was due, this case has been rendered moot.

> Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot.

*Federal Bureau of Investigation v. Fikre*, 144 S.Ct. 771, 777, 601 U.S. 234, 240 (2024).

Relying on the fact that the express language of the October 18 letter contains no more than Defendants' promise that "short-term disability benefits in the amount of $8,720.58, less all applicable taxes and deductions, *will be* made payable to Ms. House-

7

Forshee," (Doc. 15-1, PageID 47, emphasis added), Plaintiff first argues that the letter is insufficient evidence that Defendants actually have *completed* payment. (*See* Doc. 18, PageID 128, arguing that the letter is not "evidence that it fulfilled its obligations to pay" the short-term benefits). Apart from challenging the evidentiary sufficiency of the letter to prove that the payment was made, however, Plaintiff does not dispute Defendants' representation that she has been paid the full sum referenced in the letter. To the extent that any lingering doubt existed about whether Defendants completed the promised payment, W&S has submitted sufficiently probative additional evidence with its reply memorandum: a December 2024 written acknowledgement from Plaintiff's counsel that all short-term benefits have been paid. (Doc. 20-1). Therefore, the undersigned concludes that Plaintiff's substantive claim is moot.

### C. The Court May Exercise Equitable Jurisdiction over Attorney Fees

Defendants urge the Court to grant their motion and dismiss this case in its entirety. Plaintiff protests. She argues that this Court should continue to exercise jurisdiction over her still-pending claims for relief for attorney's fees and costs, prejudgment interest, and any other "equitable relief" to which she may be entitled, consistent with her request for relief in her complaint. In a reply memorandum, Defendants argue that Plaintiff's ancillary claim for fees and costs cannot save a case from dismissal where subject matter jurisdiction is lacking.

On the record presented, both parties are correct – to a point. W&S is correct that a plaintiff's claim for attorney's fees cannot "create" subject matter jurisdiction that is otherwise lacking. But Plaintiff is also correct that the dismissal of an underlying substantive ERISA claim that has become moot does not defeat the Court's ability to

8

exercise equitable jurisdiction over an ancillary claim such as Plaintiff's claim for attorney's fees and costs.

In their response and reply briefs, the parties treat these separate jurisdictional issues as if they are one and the same. The fact that they are not is partially illustrated by *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 110 S. Ct. 1249 (1990), the case on which Defendants chiefly rely. Importantly, *Lewis* is not an ERISA case but involved an Illinois bank holding company's challenge to Florida's prohibition on the operation of an "industrial savings bank" by an out-of-state holding company under the Commerce Clause. The bank won in the district court and the Eleventh Circuit affirmed, awarding attorney's fees for bank counsel's appellate work. The Supreme Court reversed because 1987 amendments to the Bank Holding Company Act had mooted the entire controversy prior to the Eleventh Circuit's decision, thereby depriving the appellate court of its subject matter jurisdiction. The *Lewis* Court held that the bank's remaining interest, to recover its appellate attorney fees as a "prevailing party" was "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim" given that the Eleventh Circuit lacked subject matter jurisdiction over the underlying substantive claim at the time it issued its decision. *Id.*, 494 U.S. at 480, 110 S.Ct. at 1255.

The *Lewis* Court's rejection of the premise that a fee issue can "create" (or continue) subject matter jurisdiction after the underlying claim is rendered moot was derived from the express language of the fee statute at issue, 42 U.S.C. § 1988, which requires proof of "prevailing party" status. The *Lewis* Court reasoned that because it vacated the Court of Appeals judgment "on the basis of an event that mooted the controversy *before* the Court of Appeals' judgment issued, [the bank] was not, *at that*

stage, a 'prevailing party' as it must be to recover fees under § `1988.'" *Id*. at 483, 110 S.
Ct. at 1256 (emphasis added). *Lewis* does not bar the exercise of continued equitable
jurisdiction over an ongoing claim for attorney fees that *is* supported by statutory
language. Underscoring that point, the Supreme Court remanded for consideration of
whether the bank could still recover its fees as "prevailing party" under § 1988 for work at
the trial court level - before the case became moot - "even though the [district court]
judgment was mooted after being rendered but before the losing party could challenge its
validity on appeal…." *Id.* In other words, the remand in *Lewis* itself proves the continued
exercise of equitable jurisdiction over a claim for attorney's fees after the underlying
substantive claim has been rendered moot, so long as that exercise of jurisdiction is
supported by the statutory language at issue.[3]

 In support of their position that Lewis should be read more broadly, Defendants
cite to *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 541-42 (2020), which was an ERISA case.
But *Thole* holds only that a different aspect of subject matter jurisdiction – standing –
cannot be created by an ancillary claim for attorney fees in the absence of any substantive
claim at the outset of litigation. *Thole* is easily distinguished precisely because it rests on
standing rather than the very different doctrine of mootness.[4] In contrast to *Thole*, Plaintiff

---

[3]None of the case law cited by Defendants' cases holds to the contrary. *See, e.g. Dellarussiani v. Ed
Donnelly Enters.*, No. 2:07-cv-00253, 2007 WL 3025340 (S.D. Ohio Oct. 15, 2007) (granting defendants'
motion to dismiss entire FLSA case as moot while entering judgment in favor of plaintiffs when the Rule 68
offer of judgment *included* payment of reasonable attorney's fees under the relevant fee statute).

[4]The twin doctrines of mootness and standing are commonly conflated by litigants. *See e.g., Fox v. Saginaw
Cnty., Michigan*, 67 F.4th 284, 297 (6th Cir. 2023). In the simplest terms, "[t]he doctrine of standing generally
assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it
exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 796 (2021); *but see Friends
of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 190–92, 120 S.Ct. 693, 145
L.Ed.2d 610 (2000) (critiquing definition of mootness as "standing set in a time frame" as overly simplistic
and incomplete). As this case illustrates, distinctions between the two doctrines are paramount when
considering the court's equitable jurisdiction over ancillary claims that remain when a primary substantive
claim has been rendered moot by post-litigation events.

here established standing at the outset of litigation when she sued for wrongful denial of her short-term benefits claim. One does not lose standing merely because a claim is subsequently rendered moot by Defendants' post-litigation conduct. *Contrast*, *generally*, *Schaffer v. Prudential Ins. Co. of Am.*, 301 F. Supp.2d 383, 386 (E.D. Pa. 2003) (denying attorney fees in a case where ERISA lawsuit had been stayed as prematurely filed prior to exhaustion, and court later dismissed case and denied fees because benefits were awarded during that process).[5]

In support of this Court's continued jurisdiction over the fee issue, Plaintiff cites to *Averbeck v. Lincoln Nat'l Life Ins. Co.*, No. 20-cv-420-jdp, 2021 U.S. Dist. LEXIS 188069, at *3 (W.D. Wis. Sept. 30, 2021), a case in which a district court denied defendant's Rule 12(b)(1) motion to dismiss an ERISA action where – like here - the underlying claim had been rendered moot by the defendant's post-litigation award of benefits. The discussion in the unpublished *Averbeck* is somewhat cursory, but the published Seventh Circuit case on which that court relied is more illuminating.

> In the [Freedom of Information Act] context, courts exercise equitable jurisdiction to adjudicate fee claims in similar circumstances. Specifically, when a plaintiff seeks information under FOIA and associated attorney fees, courts retain equitable jurisdiction to adjudicate the fee claim after the defendant produces the requested information and thus renders the FOIA claim moot. *See, e.g., Cornucopia Inst.*, 560 F.3d at 676–78; *Anderson v. U.S. Dep't of Health & Human Servs.*, 3 F.3d 1383, 1385 (10th Cir.1993) ("Dismissing the [FOIA] action as moot ... did not affect plaintiff's right to seek attorney's fees; the fee request 'survive[d] independently under the court's equitable jurisdiction.' ") (quoting *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir.1986)).
>
> We extend our FOIA jurisprudence into the ERISA context, and hold that where a plan participant or beneficiary sues to recover benefits under

---

[5]Arguably, the *Schaffer* court could have dismissed for lack of standing based on the plaintiff's failure to prove actual injury prior to filing suit, because the administrative exhaustion process was ongoing. Clearly, counsel earned no right to fees under ERISA for a premature lawsuit over which the court never obtained jurisdiction.

ERISA § 502(a) on a deemed denial theory and attorney fees under ERISA § 502(g), and the plan pays the benefit claim in full shortly after the plaintiff files suit, courts retain equitable jurisdiction to adjudicate the fee claim. Were courts to lack jurisdiction, opportunistic plans could routinely delay deciding whether to pay benefit claims until participants and beneficiaries file suit, effectively requiring them to incur legal costs unrecoverable under ERISA § 502(g) in order to receive benefits to which they are legally entitled. In this case, if plans routinely pay benefit claims in full shortly after participants and beneficiaries file suit, seeking, perhaps, to avoid having to pay the plaintiff's costs for bringing the ERISA suit, plans could significantly blunt ERISA § 502(g). That provision permits certain ERISA plaintiffs who achieve "some degree of success on the merits" of their ERISA suits to recover the legal costs they incurred in achieving that success. *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 130 S.Ct. 2149, 2152, 2158, 176 L.Ed.2d 998 (2010) (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)); *see also* 29 U.S.C. § 1132(g). Thus, if courts lacked jurisdiction over claims for attorney fees in cases like Pakovich's, a financial barrier to seeking ERISA benefits would exist such that plaintiffs should sue for benefits only if their expected recovery of benefits exceeded their legal fees. Such a barrier would contradict one of ERISA's primary policies, to protect "the interests of participants in employee benefit plans and their beneficiaries ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Permitting courts to exercise equitable jurisdiction thus effectuates Congress's intent. After concluding that the district court retained jurisdiction over Pakovich's claim for attorney fees, we now turn to the substance of its decision.

*Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 493 (7th Cir. 2011); *see also, generally,*

*Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1329 (9th Cir.1999) ("No Article III

case or controversy is needed with regard to attorneys' fees as such, because they are

but an ancillary matter over which the district court retains equitable jurisdiction even

when the underlying case is moot.").

The Sixth Circuit's jurisdictional analysis under FOIA has been in lock-step with

that of the Seventh Circuit. *See GMRI, Inc. v. E.E.O.C.*, 149 F.3d 449, 451-452 (6th Cir.

1998) (holding that even though FOIA request was moot in light of the agency's

production of information, the plaintiff's motion for fees and costs, based on the assertion

that "the existence of the lawsuit had a causative effect upon the release of ...information" was an "ancillary" claim that "survive[s] independently under the court's equitable jurisdiction." (quoting *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986) (additional citations omitted)). Although no Sixth Circuit decision applies the same analysis to the exercise of equitable jurisdiction over a motion for fees under ERISA, the undersigned is persuaded by *Pakovich* that this Court could exercise equitable jurisdiction over a fee claim under § 1132(g)(1) even if the substantive claim is rendered moot.[6] *See also Salgado-Rios v. Department of Homeland Security*, No. 1:20-cv-60-PLM, 2021 WL 5628810, at *1 (W.D. Mich. Jan. 22, 2021) (discussing case law holding that a court may exercise equitable jurisdiction over an attorney fee claim in a FOIA case that has become moot due to the disclosure of the requested documents).

At the same time, the undersigned finds no basis for exercising equitable jurisdiction over any claim for "prejudgment interest" or for "other equitable relief." The claim for prejudgment interest is moot because there will never be a monetary judgment from which prejudgment interest could be calculated. And unlike Plaintiff's statutory claim for attorney fees and costs, there is no basis for continued jurisdiction over her vague and cursory reference to "other equitable relief" in the complaint.

### D. The ERISA Fee Provision and the Catalyst Theory

The conclusion that this Court may exercise equitable jurisdiction over Plaintiff's continuing claim for attorney's fees and costs under ERISA does not fully answer the

---

[6]W&S cites to language in a footnote in *Word Seed Church v. Village of Hazel Crest*, 111 F.4th 814, 819 n.1 (7th Cir. 2024) that dismisses an inferred argument by plaintiff that its claim for attorney fees might "stave off mootness" as "mistaken." Considering that *Word Seed Church* does not even mention *Palovich*, the undersigned is not persuaded that the Seventh Circuit intended to overrule that precedent in a footnote that consists entirely of dictum.

question of whether Plaintiff has a valid legal basis for such a claim. With respect to that issue, W&S reasons that because it awarded benefits at the administrative level prior to and independent of any substantive rulings from this Court, Plaintiff may not recover statutory fees for her work. In response, Plaintiff insists that W&S would not have voluntarily reopened the closed appeal and awarded her benefits in the absence of this lawsuit. In other words, Plaintiff asserts that she is entitled to fees because this litigation was the "catalyst," or at least a contributing factor, to the Defendants' decision to award her short-term benefits.

In reply, Defendants urge the Court to reject the catalyst theory of recovery, citing to Supreme Court and Sixth Circuit case law that limits fee awards to a "prevailing party." *See, generally*, *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1825, 1839 (2001) (rejecting the "catalyst theory" under the FHAA" because Congress wrote statutory fee provision to include "prevailing party" as a "legal term of art," limiting awards to "one who has been awarded some relief by the court."); *Doe v. Univ. of Mich.*, 78 F.4th 929, 951-52 (6th Cir. 2023) (citing *Buckhannon* when interpreting "prevailing party" fee provision under 42 U.S.C. § 1988). But the case law on which Defendants rely is inapposite because ERISA does not limit fee awards to a "prevailing party."

In *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2157, 560 U.S. 242, 253-54 (2010), the Supreme Court explicitly rejected application of "prevailing party" precedents to the very different fee provision under ERISA.

> Our "prevailing party" precedents… do not govern the availability of fees awards under § 1132(g)(1), because this provision does not limit the availability of attorney's fees to the "prevailing party."…

14

> Instead, we interpret § 1132(g)(1) in light of our precedents addressing statutory deviations from the American Rule that do not limit attorney's fees awards to the "prevailing party." In that line of precedents, *Ruckelshaus* is the principal case.

*Id.* The Supreme Court held that to recover fees under ERISA, the claimant need only show "some degree of success on the merits" that is not merely "trivial" or a "purely procedural victory." *Id.*, 130 S.Ct. 2149, 2158, 560 U.S. 242, 255 (2010) (brackets omitted, quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S. Ct. 3274 (1983)). *Ruckelshaus* also provides support for application of the "catalyst theory," insofar as the Court held there that legislative history showed that Congress intended to permit fee awards under the analogous Clean Air Act to be made in "suits that force[] defendants to abandon illegal conduct, although without a formal court order." *Id.*, 463 U.S. at 687 n. 8.

Defendants fail to cite to any controlling or persuasive opinion that rejects the continued application of the catalyst theory to § 1132(g)(1). Nor does W&S cite to case law that rejects the theory as applied to any analogous fee statutes that lack language limiting an award to a "prevailing party." At least two pre-*Buckhannon* cases that W&S cites applied the catalyst theory to award fees under ERISA after the substantive claim was rendered moot by a defendant's post-litigation conduct. See *Cage v. General Motors Defined Ben. Salaried Plan*, 98 F.Supp.2d 803, 811 (E.D. Mich., 1999) (holding the plaintiff was still entitled to recover fees under ERISA even though the substantive claim was moot, because there was "some evidence that GM may have misstated the facts by taking credit for having discovered the calculation error when it was Plaintiff who initially brought the matter to GM's attention"); *see also Petro v. Flintkote Co.*, 633 F. Supp. 10, 11-12 (N.D. Ohio 1986) (awarding attorney's fees in an ERISA action that was "casually related to securing the relief obtained," despite granting the Defendants' motion to dismiss

15

the case as moot). *See also GMRI*, *Inc.*, 149 F.3d at 451-452 (applying version of catalyst theory under FOIA).

Post-*Buckhannon*, other Courts of Appeal considering the issue continue to apply the catalyst theory to the ERISA fee statute because § 1132(g)(1) lacks the "prevailing party" limitation. *See Templin v. Independence Blue Cross*, 785 F.3d 861, 865 (3rd Cir. 2015) (discussing post-*Buckhannon* case law and holding that catalyst theory continues to apply to ERISA fee provision); S*carangella v. Group Health, Inc.,* 731 F.3d 146, 154-55 (2d Cir. 2013) (same). Based on the undersigned's review of pre- and post-*Buckhannon* case law, the Sixth Circuit appears likely to agree. *See McKay v. Reliance Standard Life Ins. Co.*, 428 Fed. Appx. 537, 545 (6th Cir. 2011) (holding that remand order constituted "some degree of success on the merits" supporting ERISA fee award even though plaintiff was denied benefits after remand); *Knickerbocker v. Ovako-Ajax, Inc.*, 1999 WL 551409, at *5 (6th Cir. 1999) (per curiam) (pre-*Buckhannon* suit holding that plaintiff may be able to recover fees under ERISA based on catalyst theory). In the more recent case of *Amos v. PPG Industries, Inc.*, No. 2:05-cv-70, 2019 WL 3889621, at *11 (S.D. Ohio August 16, 2019), Magistrate Judge Deavers cited to *Scarangella* with approval when holding that a settlement agreement under ERISA evidenced "some degree of success." *Amos* is consistent with the sentiments expressed in *Hardt* and *Ruckelshaus* that a litigant may recover fees even without a court order, including under a catalyst theory. District courts in other circuits have reached similar conclusions. *See Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 963 F.Supp.2d 950, 963-964 (N.D. Cal., 2013) ("[T]he catalyst theory remains viable for purposes of § 1132(g)(1)."); *Glover v. Hartford Life and Accident Insurance Company*, 617 F.Supp.3d

90, 100 (D.N.H. 2022) (finding catalyst theory to be persuasive, holding that voluntary extrajudicial settlement entitled plaintiff to fees under ERISA); *contrast Desharnais v. Unum Life Ins. Co. of Am.*, No 5:19-cv-6599-EJD, 2021 WL4481861 (N.D. Cal. Sept. 30, 2021) (agreeing that ERISA supports a catalyst theory, but denying fees where plaintiff failed to show how lawsuit was "a contributing factor" in the post-litigation award).

The same result was obtained in post-*Buckhannon* decisions that have reviewed the continued viability of the catalyst theory under analogous fee provisions. *See*, *e.g.*, *Ohio River Valley Env'l Coalition, Inc. v. Green Valley Coal,* 511 F.3d 407, 414 (4th Cir. 2007) (Surface Mining Control and Reclamation Act); *Sierra Club v. Env'l Protection Agency,* 322 F.3d 718, 726 (D.C. Cir. 2003) (Clean Air Act); *Loggerhead Turtle v. Cty. Council,* 307 F.3d 1318, 1325 (11th Cir. 2002) (Endangered Species Act); *Environmental and Policy Institute v. Tennessee Valley Authority*, No.: 3:22-CV-220-TAV-DCP, 2025 WL 410075, at *2-3 (E.D. Tenn. Feb. 5, 2025) (acknowledging that seven Courts of Appeal have held that the catalyst theory applies in the FOIA context, denying fees only because plaintiff had not shown that its lawsuit "had a substantive causative effect"); *Lawrence v. United States Small Business Admin.*, No. 20-11637, 2021 WL 4398328, at *8 (E.D. Mich. Sept 27, 2021) (awarding fees under FOIA where plaintiff's lawsuit was "a contributing cause" of post-litigation release of documents); *U.S. v. Board of Cnty. Commissioners of Hamilton Cnty., OH*, No. 1:02-cv-107-SAS, 2005 WL 2033708, at *16 (S.D. Ohio Aug. 23, 2005) (catalyst theory still applies under Clean Water Act).

Of course, in most cases, a motion for fees is filed only after the claimant obtains a favorable judicial ruling, or at least a written settlement agreement that provides evidence of litigation success. But Plaintiff cites to two unpublished cases involving similar

17

facts to those presented here. In *Doe v. Raytheon Co.*, No. 00-12545-RWZ, 2002 WL 1608279 (D. Mass. July 19, 2002), an ERISA claimant administratively exhausted his claim before filing suit. Immediately after he filed suit, Defendants reversed their decision and reinstated his benefits. After drawing the reasonable inference that it was the lawsuit that "convinced defendants of their error," the court awarded fees. *Id.* at *2. Similarly, in *Pomerleau v. Health Net of California, Inc.*, No. CV 11–01654 DDP, 2012 WL 5829850 (C.D. Cal. Nov. 15, 2012), initially the defendant partially denied plaintiff's administrative appeal but reversed course two weeks after she filed suit. Despite the lack of any substantive decisions made in the court case, the court awarded fees under a liberal construction of ERISA's fee provision.

W&S argues that *Raytheon* and *Pomerleau* are distinguishable because in both cases, the defendants reversed their decisions immediately after the plaintiffs filed suit. In the above-captioned case, the reversal did not occur until seven months after suit was filed, albeit before any discovery had occurred. According to W&S, the delay between the date that suit was filed in March and the October 18 letter demonstrates that its reversal was based on the "additional information provided to and considered by W&S outside [this] lawsuit." (Doc. 20, PageID 146). But Defendants' argument is unpersuasive given their failure to identify to Plaintiff or to this Court what "additional information" caused the reversal, and Plaintiff's counsel's countervailing submission of evidence of the close temporal proximity of settlement discussions concerning the precise course of action taken by W&S (reopening and reversing the appeal decision).

### E. Next Steps

At this juncture, Plaintiff has demonstrated that this Court may continue to exercise

equitable jurisdiction over a claim for fees and costs, and some legal basis for such a claim under ERISA. But Plaintiff has put the cart before the horse, because she has yet to file a motion for fees. And in the Sixth Circuit, proving "some degree of success" is merely the first hurdle to obtaining a fee award under ERISA. If a plaintiff surpasses that initial hurdle, then the trial court will proceed to apply the five factor test set out in *Secretary of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985). *See Pfenning v. Liberty Life Assurance Company of Boston*, 282 F.Supp.3d 1027, 1029 (S.D. Ohio, 2017).

Considering the current procedural posture, the undersigned recommends the course followed in *Outside Legal Counsel PLC v. Transportation Security Administration*, No. 23-cv-10553, 2024 WL 4361941 (E.D. Mich. Sept. 30, 2024). There, the court granted the agency's motion to dismiss a FOIA complaint as moot under Rule 12(b)(1) in light of the agency's post-litigation production. As in the instant case, the plaintiff had argued that it was entitled to fees but had not filed a formal motion. Recognizing that a motion could be appropriate, the court instructed the plaintiff to file any post-judgment motion seeking a discretionary award of fees under FOIA, pursuant to Rule 54(d), Fed. R. Civ. P., to the extent that it continued to seek such relief. *Accord Roman v. United States Department of State*, No. 1:15-cv-887, 2017 WL 1380039 (W.D. Mich. Mar. 27, 2017).

### III. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:**

1. Defendants' Rule 12(b)(1) motion to dismiss this case as moot (Doc. 15) be **GRANTED,** with judgment to be entered in favor of Defendants;

2. Plaintiff shall file any post-judgment motion for a discretionary award of fees under ERISA pursuant to Rule 54(d), Fed. R. Civ. P., to the extent that she

continues to seek such relief

                             *s/Stephanie K. Bowman*
                             Stephanie K. Bowman
                             United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERTA HOUSE-FORSHEE,                    Case No. 1:24-cv-110

                    Plaintiff,            McFarland, J.
        v.                                Bowman, M.J.


BENEFITS COMMITTEE OF WESTERN & SOUTHERN
FINANCIAL GROUP CO. FLEXIBLE BENEFITS PLAN, et al.,

                    Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21