**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ROBERTA HOUSE-FORSHEE, | Case No. 1:24-cv-110 |
| Plaintiff, | McFarland, J. |
| v. | Bowman, M.J. |
| BENEFITS COMMITTEE OF WESTERN & SOUTHERN FINANCIAL GROUP CO. FLEXIBLE BENEFITS PLAN, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

On March 5, 2024, Plaintiff Roberta House-Forshee filed this civil action against the Benefits Committee of Western & Southern Financial Group Co. Flexible Benefits Plan and Western & Southern Financial Group, Inc. (collectively "W&S") under the Employee Retirement Income Security Act of 1974 ("ERISA") in order to contest the denial of her claim for short term disability ("STD") benefits. Thereafter, the case was referred to the undersigned. (Doc. 2.)

On January 30, 2025, Defendants filed a motion to dismiss this case for lack of jurisdiction based on the doctrine of mootness. Defendant's motion relied on a post-litigation decision by W&S to reverse its denial of Plaintiff's STD claim for the period of July 8, 2023 through October 30, 2023. (Doc. 15-1.) On April 29, 2025, the undersigned filed a Report and Recommendation ("R&R") recommending that Defendant's motion to dismiss be granted, but without prejudice to Plaintiff's ability to move for a post-judgment award of attorney's fees if appropriate. (Doc. 21.) Neither party objected to that R&R, which the Court adopted on May 21, 2025. (Doc. 22.)

Plaintiff filed a post-judgment motion for attorney fees. (Doc. 24.) Defendant filed

a response in opposition, to which Plaintiff filed a reply memorandum. (Docs. 29, 31.) For the reasons stated, the undersigned now recommends the denial of Plaintiff's motion for fees.

I. **Factual and Procedural Background**

Plaintiff was employed as a customer service representative at the Gerber Life Insurance Company, a subsidiary of Western & Southern Financial Group. On June 12, 2023, Plaintiff submitted a claim for short-term disability benefits to the Western & Southern Financial Group Flexible Benefits Plan. After initially approving the claim through July 7, 2023, W&S terminated Plaintiff's STD benefits after that date. A letter dated July 27, 2023 explained that the denial was based on Plaintiff's failure to provide "updated medical information." Plaintiff timely appealed but W&S denied her appeal on August 29, 2023, communicating that decision by letter dated September 8, 2023. The denial letter cited a lack of documentation "including doctor notes from recent visits and physical therapy notes." (Doc. 17-1, PageID 59-60; *see also* Complaint, ¶¶ 20, 15-27, Doc. 17-1, PageID 71). An "Appeal Summary" reflects that documentation specifically identified as missing included continuation of whether a July 21, 2023 "MRI was completed along with a copy of the MRI report," as well as a record from a neurosurgeon appointment scheduled for August 21, 2023. (Doc. 17-1, PageID 60.)

Having administratively exhausted the denial of continued STD benefits, Plaintiff filed the above-captioned case on March 5, 2024 ("STD case"). In this STD case, Plaintiff alleged that the denial of continued STD benefits was arbitrary and capricious and in violation of ERISA and Defendants' fiduciary obligations. (Doc. 1). In part, Plaintiff alleged that W&S "arbitrarily ignored and selectively reviewed documents" that Plaintiff had

2

submitted and "failed to provide a full and fair review." (Doc. 1, ¶ 32). Plaintiff alleged that W&S sent an incomplete file to the Appeals Committee and took no action after it became aware of that her file was incomplete. (Doc. 1, ¶¶ 25-27; Doc. 17-1, PageID 83-116).

Before filing this case, or about January 10, 2024, Plaintiff filed an administrative claim seeking long term disability ("LTD") benefits. (Doc. 17, ¶ 3.) W&S initially denied her LTD claim on April 8, 2024. (Doc. 17, ¶4.) Plaintiff filed an administrative appeal of that denial with the same Benefits Appeals Committee that had denied her STD claim. (Doc. 17, ¶ 6.) On October 18, 2024,[1] the Appeals Committee announced that it had reopened and "further considered" the previously-closed STD claim, reversing its 2023 adverse decision. (Doc. 15-1, PageID 47.) In so doing, W&S notified Plaintiff's counsel that it was awarding Plaintiff all STD benefits that she sought in this STD case, totaling $8,720.58 for the period of July 8, 2023 through October 30, 2023. (*Id.*) Following receipt of that news, Plaintiff's counsel attempted to settle her attorney's fees for this STD case, which then totaled $4,108.50.

The parties never consummated a written settlement of fees. Instead, on January 30, 2025, Defendants moved to dismiss the STD case for lack of subject matter jurisdiction. Relying on its October 2024 reversal, W&S argued that the STD case had been rendered entirely moot by its payment of all STD benefits to which Plaintiff was entitled.[2] Plaintiff did not seriously dispute that W&S had paid her all STD benefits that

---

[1] Inconsistently, Plaintiff's counsel's time records contain no entry for October 18, but instead reflect her receipt and review of "W&S administrative reversal of benefits" on October 2, 2024, the same date that she recorded time for filing an appeal of the LTD claim (October 2, 2024). (Doc. 17-2, PageID 119). The October 18 letter from W&S, by contrast, states that "[t]he Benefits Appeals Committee received the appeal filed on or about October 1, 2024." (Doc. 15-1, PageID 47.)

[2] Because Defendant asserted mootness based on events that occurred after suit was filed, its motion was construed as a factual attack on the subject matter jurisdiction. Both parties submitted evidentiary exhibits in connection with that factual attack and the exhibits were accepted and considered for that purpose.

3

she was due, but objected to dismissal based on the outstanding attorney fees.

The Court granted Defendant's motion to dismiss. (Doc. 21, PageID 158, "W&S persuasively argues that because it has now paid Plaintiff all short-term benefits that she was due, this case has been rendered moot.") But the Court also reasoned that the dismissal of the substantive ERISA claim did not prohibit it from exercising equitable jurisdiction over a *future* post-judgment ancillary claim for attorney's fees and costs, should Plaintiff decide to seek such an award. Noting that no such motion had been filed, the Court directed Plaintiff to "file any post-judgment motion for a discretionary award of fees under ERISA pursuant to Rule 54(d), Fed. R. Civ. P., to the extent that she continues to seek such relief." (*Id.*, PageID 170-171; *see also* Doc. 22 (adopting R&R).)

As stated, the Court's decision was limited to the then-pending motion to dismiss. In that context, the Court was required to consider: (1) if Plaintiff's asserted claim for fees precluded dismissal of the underlying case as moot; and (2) if the substantive claim were to be dismissed as moot, whether the Court could continue to exercise jurisdiction over a post-judgment motion for fees. The Court ruled in Defendant's favor on the first issue, and in Plaintiff's favor on the second.

But the Court also explained that its "conclusion that this Court may exercise equitable jurisdiction over Plaintiff's continuing claim for attorney's fees and costs under ERISA does not fully answer the question of whether Plaintiff has a valid legal basis for such a claim." (Doc. 21, PageID 164-165.) The latter question arose because the parties invited consideration of whether fees under 29 U.S.C. § 1132(g)(1) are ever permitted when a Plan awards benefits without a substantive ruling from a court. Plaintiff maintained that a future award of fees could be made under a "catalyst" theory, insisting "that W&S

4

would not have voluntarily reopened the closed appeal and awarded her benefits in the absence of this lawsuit." (Doc. 21, PageID 165.) In contrast, W&S argued that ERISA forecloses recovery under a catalyst theory.

Ruling against W&S, the Court accepted Plaintiff's legal premise that ERISA can support a discretionary award of fees on the basis of a catalyst theory as a matter of law. (*See generally*, Doc. 21, PageID 164-169.) The Court was careful to explain, however, that its holding that a claim for attorney fees under § 1132(g)(1) is legally *viable* under a "catalyst" theory was not a ruling that fees would be awarded. In other words, the Court did no more than recognize that a motion for fees "could be appropriate" under a catalyst theory, even though such an award remained "discretionary" under the statute and subject to the *King* factors (*Id.*, PageID 170.) The only issue the Court could definitively resolve was presented in Defendant's motion to dismiss for lack of jurisdiction. In relationship to a future motion for fees, the Court concluded:

> At this juncture, Plaintiff has demonstrated that this Court may continue to exercise equitable jurisdiction over a claim for fees and costs, and some legal basis for such a claim under ERISA. But Plaintiff has put the cart before the horse, because she has yet to file a motion for fees. And in the Sixth Circuit, proving "some degree of success" is merely the first hurdle to obtaining a fee award under ERISA. If a plaintiff surpasses that initial hurdle, then the trial court will proceed to apply the five factor test set out in *Secretary of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985). *See Pfenning v. Liberty Life Assurance Company of Boston*, 282 F.Supp.3d 1027, 1029 (S.D. Ohio, 2017).

(*Id.*, PageID 169-170.)

Following entry of judgment, Plaintiff timely filed a post-judgment motion seeking an award of fees under Rule 54(d). That motion is now ripe for review.

## II. Analysis

### A. Factors to be Considered When Awarding Fees under ERISA

Based on the Defendant's post-litigation award of the STD benefits, Plaintiff now seeks an award of attorney fees under 29 U.S.C. § 1132(g)(1), which permits a discretionary award of "reasonable attorney's fee and costs." In *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2157 (2010), the Supreme Court held that under the ERISA fee statute, a claimant need only show "some degree of success on the merits" that is not merely "trivial" or a "purely procedural victory." *Id.*, 130 S.Ct.at 2158. (brackets omitted, quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S. Ct. 3274 (1983)). If a claimant has proven that she is eligible to recover fees under the *Hardt* standard, the Sixth Circuit has approved the use of five additional factors to inform the exercise of judicial discretion in making a fee award. Thus, in the Sixth Circuit, courts may also consider: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. See *Secretary of Dep't of Labor v. King*, 775 F. 2d 666 (6th Cir. 1985). Having considered both the degree of success under *Hardt*, and the *King* factors, the undersigned recommends the denial of fees in this case.

### 1. The Degree of Success Under the *Hardt* Standard

Plaintiff argues that she meets the threshold for eligibility for fees under *Hardt* despite the dismissal of this lawsuit as moot without any substantive order in her favor,

6

because this lawsuit was the catalyst for her recovery of benefits. As discussed, this Court previously held that Plaintiff had demonstrated that the Court "may continue to exercise equitable jurisdiction" over a future fee claim, and "some legal basis for such a claim under ERISA" because the ERISA statute could support an award under the catalyst theory. Plaintiff now seeks fees on grounds that she filed this case, and W&S opened a closed administrative appeal and made a full STD award seven and a half months later. But this is not a case of res ipsa loquiter. The reason why W&S reopened the closed appeal is heavily contested.

In support of her contention that this lawsuit was the catalyst, Plaintiff points to an email concerning settlement discussions. On October 2, 2024, Plaintiff's counsel received and responded to an email from opposing counsel "re discovery response extension and potential settlement." (Doc. 17-2, PageID 119.) In her responsive email, Plaintiff's counsel suggests that a traditional settlement of the STD claim – without reversing of the STD decision at the administrative level – could adversely impact Plaintiff's pending appeal of her much larger LTD claim. (*See* Doc. 17, ¶ 8, "With W&S's review of the LTD claim still open…a traditional confidential settlement of the STD claim would potentially prejudice Ms. House-Forshee down the line if the LTD appeal were denied.") In lieu of leaving the STD denial in place, Plaintiff's counsel proposed "*some sort of an administrative reversal* of the STD benefit. I'm open to discussing the contours of this but to me the easiest thing seems to be an administrative decision by W&S that would essentially render the [STD] lawsuit moot as to her benefit claim, and settlement as to (my limited) attorney fees and costs [in the STD case]." (*Id.*, emphasis added.) Sixteen days after that email, W&S administratively reopened the closed appeal and awarded STD benefits. Citing that

7

temporal proximity, Plaintiff insists that it must have been her settlement proposal in this case that motivated W&S to reverse course.

As a threshold issue, W&S objects to this Court's consideration of the settlement proposal under Federal Rule of Evidence 408(b). But the evidence is admissible because it has been offered to prove or disprove whether Plaintiff's lawsuit was a catalyst for the reinstatement of STD benefits, rather than as proof that Plaintiff was entitled to benefits. Alternatively, W&S waived any objection when it failed to object to the Court's prior consideration of the same evidence.

Nevertheless, W&S offers persuasive evidence that undermines Plaintiff's position that the settlement email rather than new medical documentation submitted with Plaintiff's separate LTD claim was the basis for reopening the appeal and awarding STD benefits. Plaintiff submitted new medical documents in January 2024 in connection with her initial LTD claim,[3] and submitted records again on October 1, 2024 in connection with the appeal of the denial of that LTD claim. W&S asserts that it was the receipt and review of the October documentation in connection with Plaintiff's appeal of her LTD claim,[4] that prompted the Benefits Appeals Committee to sua sponte reopen the long-closed STD appeal. In other words, the retroactive award was not based on counsel's settlement proposal in this STD case, but on new medical documentation submitted to the same Benefits Appeals Committee long after the STD appeal had been closed. (Doc. 29, PageID 624).

W&S also strongly contests the underlying merits of this STD case. W&S maintains

---

[3] Plaintiff's January 2024 LTD claim was denied on April 8, 2024. (Doc. 26-3, PageID 593-595.) .
[4] The medical records submitted by Plaintiff's counsel on January 11, 2024 in connection with her initial claim for LTD benefits appear to include the MRI and evidence that the Appeals Committee previously had requested to support the STD claim. (Doc. 24-2, PageID 203-204.)

that its strong anticipated defense of the 2023 denial of Plaintiff's STD appeal supports its position that this case was not a catalyst for the award of STD benefits. W&S has filed extensive exhibits to show that its 2023 denial of Plaintiff's STD appeal was supported by her failure to timely submit requested medical documents and therefore was in good faith. According to W&S, the Appeals Committee never received the critical records before Plaintiff transmitted them to the Committee in connection with her appeal of the denial of LTD benefits in October 2024.

Plaintiff protests that "the only 'new' information Defendants received" in October 2024 "was Plaintiff's settlement position" in this STD case. (Doc. 24, PageID 186.) To the extent that W&S now claims otherwise, Plaintiff argues that the law-of-the-case doctrine bars this Court from considering the issue. The undersigned disagrees. For one thing, "Sixth Circuit precedent establishes that the law-of-the-case doctrine is confined to circumstances in which the district court is evaluating issues already decided by an appellate court, and does not bind district courts in reevaluating its own determinations." *See United States ex rel. Holbrook v. Brink's Co.*, 336 F. Supp. 3d 860, 867 (S.D. Ohio 2018) (internal citations omitted, emphasis original). This case has not previously been appealed.

Courts do not revisit decisions "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983) (additional citation omitted)). Here, however, the Court also finds the law-of-the-case doctrine to be inapplicable because this Court never fully considered the precise issue now presented. In its prior analysis of the Court's

9

continued jurisdiction over a future motion for fees, the Court's primary concern was whether the catalyst theory was viable under the ERISA fee statute. At the time, W&S had argued that the catalyst theory was neither legally viable nor factually supported.

In support of the factual argument, W&S cited the language of its October 18, 2024 letter awarding STD benefits. The letter attributed the Committee's belated reversal of the STD appeal to "additional information received by the Benefits Appeals Committee" but did not specifically identify what information was received. (*See* Doc. 15-1, PageID 47.) But W&S's main argument in support of dismissal (and the preclusion of continued jurisdiction) was that recovery of fees under a catalyst theory is not legally viable under the ERISA statute. W&S sought to distinguish the few cases cited by Plaintiff that supported the viability of the catalyst theory on grounds that in those cases, the award of benefits had occurred immediately after suit was filed, whereas here, the STD award was closer-in-time to Plaintiff's LTD appeal than to the filing date of this STD case.

In its April 29, 2025 decision, the Court held only that the catalyst theory was legally viable, declining to resolve the factual dispute between W&S's assertion that the STD award was based solely on "information" submitted with the LTD appeal rather than this case. Undermining W&S's assertion that "additional information" relating to the LTD appeal was the basis for the STD award, Plaintiff had submitted an affidavit attesting to the close temporal proximity between her October 2 settlement proposal and the October 18 reversal of the STD decision.

> According to W&S, the delay between the date that suit was filed in March and the October 18 letter demonstrates that its reversal was based on the "additional information provided to and considered by W&S outside [this] lawsuit." (Doc. 20, PageID 146). But Defendants' argument is unpersuasive given their failure to identify to Plaintiff or to this Court what "additional information" caused the reversal, and Plaintiff's counsel's countervailing

10

>submission of evidence of the close temporal proximity of settlement discussions concerning the precise course of action taken by W&S (reopening and reversing the appeal decision).

(Doc. 21, at PageID 169).

Plaintiff over-relies on the quoted language to argue that this Court previously held that Plaintiff has achieved "some degree of success on the merits" under *Hardt*, and that prosecuting this STD case was the catalyst for payment of her STD benefits. In context, the Court made no such prior ruling. The prior ruling granted Defendants' motion to dismiss the underlying case as moot. Although the Court rejected Defendants' argument that it could not exercise jurisdiction after dismissal to the extent that Plaintiff sought fees under a catalyst theory, no motion for fees had yet been filed. Thus, the Court expressly reserved judgment on whether Plaintiff could recover fees under that theory. (Doc. 21, PageID 170.) The law-of-the-case applies only when the same issue has been fully considered. It does not apply when a prior ruling is based on an incomplete record or when an issue has not been fully considered. *See*, *e.g*., *Kanuszewski v. Michigan Department of Health and Human Services*, 141 F.4th 796, 803-804 (6th Cir. 2025) (holding that an earlier ruling that contained "conclusory legal statements" based on assumptions at the motion-to-dismiss stage did not establish binding law because that ruling had not involved the type of detailed and in-depth analysis of the issues that was required on summary judgment.) In addition, the doctrine does not preclude reconsideration when the earlier ruling is based on allegations that have been disproven after development of the factual record. *See*, *e.g*., *McKenzie v. BellSouth Telecomms., Inc*., 219 F.3d 508, 513 (6th Cir. 2000); *Taylor v. City of Saginaw*, 11 F.4th 483, 487 n.1 (6th Cir. 2021).

In the case presented, the Court's prior opinion was constrained to the issue presented - W&S's attack on the Court's subject matter jurisdiction. That is a very different procedural stance than the now-pending motion for fees. Now that Plaintiff has filed a motion for fees, the Court has before it a more complete administrative record concerning the original 2023 denial of the STD benefits appeal, as well as a record of what happened after that denial before the Committee's award of STD benefits more than a year later. Having reviewed that record, the Court finds insufficient proof that this STD case was the catalyst for the award of STD benefits.

In reaching that conclusion, the Court reminds Plaintiff that an award of attorney fees under ERISA is discretionary. In her reliance on the catalyst theory to meet the *Hardt* standard despite the lack of any judicial ruling in her favor on the underlying benefits claim, Plaintiff offers weak circumstantial evidence: namely, the settlement email. W&S counters that evidence with substantial administrative evidence that – while also circumstantial – suggests that Plaintiff failed to timely submit the additional medical documentation that the Appeals Committee had requested in connection with the STD claim. Defendants' citations strongly support its position that the Appeals Committee did not receive the evidence until Plaintiff submitted it in connection with her LTD claim appeal. In addition to the timing of the submission of the referenced medical evidence, the course of litigation in this STD case reflects essentially no activity – no discovery, and no other judicial rulings – from the time that the case was filed until the Appeals Committee reversed course on the STD claim 7.5 months later. In other words, the limited circumstantial proof that Plaintiff has presented in support of a fee award is insufficient, when viewing the record as a whole, to prove that this STD case was a catalyst for the

award of STD benefits. And even if a reviewing court were to conclude that Plaintiff's evidence is sufficient to satisfy *Hardt*, the undersigned's evaluation of the *King* factors also disfavors the award of any fee.

### 2. The *King* Factors do not Support a Fee Award

#### a. The Lack of Bad Fath

The first *King* factor considers the opposing party's culpability or bad faith. There was no judicial finding in favor of Plaintiff that W&S's initial denial of the STD claim was arbitrary and capricious. But even such a finding "does not necessarily indicate culpability or bad faith." *Moon v. Unum Provident Corp.,* 461 F.3d 639, 643 (6th Cir.2006). Here, the record presented supports W&S's assertion that any error in its failure to fully consider Plaintiff's STD claim reflected (at most) negligence rather than bad faith.

The record reflects that Plaintiff often muddled distinctions between documentation required for FMLA leave versus that required to obtain STD benefits, and was confused over to whom she should submit her appeal of the denial of continued STD benefits. (*See, e.g.*, Doc. 17-1, PageID 74-75; *see also* Doc. 17-1, PageID 68, stating that Plaintiff is appealing "a STD and FMLA denial letter dated 7/27/23.") On July 3, 2023, Lori Mitchell, a nurse with the Benefits Department, asked Plaintiff to provide additional medical documentation to support the continuation of STD benefits beyond July 7, 2023. The subsequent July 27, 2023 STD denial letter explained that continued STD benefits had been denied due to her failure to timely provide the medical documentation that had been requested. (Doc. 17-1, PageID 62.) The letter instructed Plaintiff to contact the Benefits Department if she had any questions, and provided instructions about how to appeal "on the enclosed review procedure for rejected Benefits Claims." (*Id.*)

13

On August 4, 2023, Lori Mitchell reminded Plaintiff: "Please submit your written appeal *to the attention of the Appeals Committee* via mail or fax (513-629-1484), as this will allow the appeals team to promptly prepare your case." (Doc. 29-1, PageID 650 (emphasis added).) Instead of submitting the appeal via postal mail or fax to the Appeals Committee as instructed, Plaintiff again emailed Mitchell on August 16, 2023 at 2:40 pm. In her email, Plaintiff asked Mitchell to "ensure these get to the "'APPEALS BOARD' as the email for the board is not provided in the 7/27 denial letter." (Doc. 17-1, PageID 82.) Mitchell responded at 4:30 pm, advising that she had "forwarded" Plaintiff's appeal of the STD denial to the Appeals Committee at Plaintiff's request, and advising Plaintiff that she could obtain updates about the status of her appeal from "the appropriate program associate" by contacting that person at an 800 number. (Doc. 29-1, PageID 648-649.) Mitchell emphasized the importance of using the 800 number, since Mitchell would be out of town "for the next several weeks." (*Id.*)

Consistent with Plaintiff's blurring of distinctions between the various types of benefits offered by W&S, this lawsuit fails to distinguish to whom records were sent, concerning what topic, or when. For example, Plaintiff's complaint alleges that W&S "*had access to all medical records* by virtue of Defendants' administration of Plaintiff's health benefits… and administration of Plaintiff's ADA accommodation requests and FMLA leave." (Complaint, ¶ 28 (emphasis added).) In support of her motion for attorney fees, she points to evidence that on August 28, 2023 at 11:19 am – the deadline for submission of records to the Benefits Appeals Committee - Plaintiff's neurosurgeon faxed additional records - including the MRI record and office visit notes that W&S previously had

14

requested to support the STD benefit claim.[5] But the neurosurgeon's office faxed those documents to the attention of Mitchell (who was out of town) and not the Benefits Appeals Committee. Even more critically, the cover letter of the fax identifies its purpose as medical support for a pre-approval request for additional testing under Plaintiff's health insurance plan rather than documentation related to her STD benefits appeal. (Doc. 17-1, PageID 102.)

In Plaintiff's reply memorandum, she asks this Court to excuse the misdirection in her transmission of records to support her STD appeal as based on a "reasonable" belief that any records faxed or emailed to either Mitchell or to any employees in W&S's "Leave Administration" department "would be considered for STD benefits" since Mitchell previously had forwarded her August 16, 2023 STD claim appeal to the Appeals Committee. (Doc. 31, PageID 679.) Despite having been instructed to mail or fax records supporting her STD appeal to the attention of the "Benefits Appeals Committee," Plaintiff argues that W&S operated in bad faith when it denied her STD appeal based on the admittedly incomplete record that she submitted on August 16. She points to modest evidence that Mitchell herself discovered that the record before the Appeals Committee was incomplete on September 3, 2023, when she returned from vacation. Although September 3 post-dated the August 28 deadline for submission of records to the Benefits Appeals Committee (and also post-dated that Committee's adverse decision), Mitchell's discovery still predated the Committee's transmittal of its denial to Plaintiff. Plaintiff thus excuses her own error in failing to timely transmit requested records to the Appeals

---

[5]Plaintiff alleges in her complaint that she submitted additional information "[b]y email dated August 30, 2023" – two days after the August 28 deadline for submission of evidence on appeal. (Complaint, ¶ 26.) The complaint does not identify what "additional information" was submitted on that date, or to whom.

15

Committee, while simultaneously accusing W&S of bad faith when its employees failed to forward untimely-discovered misdirected records to the Appeals Committee. Plaintiff reasons: "If Defendants could review supplemental information as late as October 2024 as part of a voluntary administrative review [in connection with the LTD appeal], then there is no legitimate reason for Defendants failing to reopen her STD claim on September 4. 2023 when the Defendants realized highly relevant information was left out of the information provided to the Benefits Committee for review." (Doc. 31, PageID 678).

The Court disagrees. A reasonable factfinder could attribute the lack of the complete administrative record to Plaintiff herself. To the extent that W&S did anything wrong, the record supports no more than negligence in failing to transmit the belatedly-discovered misdirected records, rather than any deliberate bad faith. *See generally, Staats v. P&G Long Term Disability Allowance Plan,* Civil Action No. 11-1320, 2012 U.S. Dist. LEXIS 121289, at *14 (W.D. Pa. Aug. 27, 2012) (a plan does not arbitrarily or capriciously deny benefits where the plan trustees determined the plaintiff was entitled to the total disability benefits she sought after the plaintiff produced the additional records for review).) Plaintiff cites to no authority that supports her position that her surgeon's transmittal of medical records relating to a pre-approval request under her health insurance plan, or a request for FMLA leave, was sufficient to transmit records to her employer's separate Benefits Appeals Committee in the midst of its review of a denial of her claim for short-term disability. Nor does Plaintiff cite to any authority that would require the W&S Appeals Committee to sua sponte reopen her closed appeal at an earlier time. In short, Plaintiff has failed to show that the initial denial of STD benefits or the Committee's failure to reopen the closed appeal at some earlier date was the result of

16

bad faith.

### b. Remaining *King* Factors

It is undisputed that W&S has the ability to satisfy the fee award. But that factor is of little importance in relation to other factors in the case presented. *Gribble v. Cigna HealthPlan of Tennessee, Inc.,* 36 F.3d 1097 (Table), 1994 WL 514529 at *4 (6th Cir.1994).

As to the remaining *King* factors, the undersigned concludes that an award of fees in this case is unlikely to have a deterrent effect on others, in part because the earlier denial rested on the claimant's failure to timely submit her supplemental medical records to the Benefits Appeals Committee. Although Plaintiff alleges that August 28 deadline itself was "arbitrary," she put forward no evidence and cites no authority to support that claim. The lack of any significant legal questions under ERISA and the extremely fact-specific nature of Plaintiff's claims also supports the Court's conclusion that a fee award is not justified by a "common benefit" of the lawsuit.

Because no substantive arguments were ever made by either party prior to dismissal, the majority of the fees that were incurred relate to the fee dispute itself.[6] While dismissal of the case as moot makes it more difficult to evaluate the competing merits of the underlying case, W&S's arguments in opposition to any fee award are persuasive.

### III. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT** Plaintiff's motion for attorney fees (Doc. 24) be **DENIED**.

---

[6]That includes the ancillary arguments made in opposition to Defendants' motion to dismiss on grounds of mootness before Plaintiff's counsel filed a motion for fees. The Court acknowledges that "fees for fees" under ERISA are generally recoverable, see *Weisenberger v. Huecker*, 593 F.2d 49, 53-54 (6th Cir. 1979). But the fact that such fees are recoverable does not mean that they must be awarded here.

                                           *s/Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ROBERTA HOUSE-FORSHEE, | Case No. 1:24-cv-110 |
| Plaintiff, | McFarland, J. |
| v. | Bowman, M.J. |
| BENEFITS COMMITTEE OF WESTERN & SOUTHERN FINANCIAL GROUP CO. FLEXIBLE BENEFITS PLAN, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).